and Folklane Group, 2371-83. Good morning, Your Honors. May it please the Court. My name is Caitlin Farrell. I'm an Assistant United States Attorney in the Eastern District of New York. I represent the government in this appeal and, along with my colleagues, represented the government in the trial court below. An American media executive and a sports marketing company with extensive U.S. business interests were convicted by jury for using U.S. wires to bribe soccer executives for lucrative media rights. The government proved the soccer executives had acceded to and breached globally recognized codes in which they committed to not engage in bribery. After the defendants' convictions, the district court erroneously granted Rule 29 acquittals on the basis of a new post-trial bright-line rule that the jury was never instructed on. That rule categorically excluded foreign commercial bribery from the ambit of the Honest Services Statute. That's correct, Your Honor. And, in fact, binding precedent from this circuit indicated the opposite, because this court, both in Behel and in Naput, had essentially endorsed the theory that the government proceeded on below. So the basic reason that I believe that she changed her approach, or she reached the conclusion she did, was because of the two new cases that the Supreme Court had decided. And the question I have there is, this is Simonelli and Prococo. Did those cases, any of those cases, hold that a foreign bribe by a foreigner and the company and the recipient of the bribe being foreigners could not be brought under the section? No, neither case held as much. Neither case even dealt with private sector bribery, much less international bribery. I'm sorry, what, Your Honor? No, that's exactly right. What you're receiving now are softballs. I appreciate it. That's correct, Your Honor. I thought you were for fastballs, correct? The district court, frankly, misread Prococo. Prococo stated that Skilling's teaching is clear, the intangible right of honest services must be defined with the clarity typical of criminal statutes, and this is the important language, should not be held to reach an ill-defined category of circumstances simply because of a smattering of pre-McNally decisions. Now, the district court misread... The defendants in that case really were pretty far-fetched, far away from this. That's exactly right. I mean, this was an individual who had some influence in the government, and could he be, could a bribe to his receiving a bribe be covered? That's correct, Your Honor, but even if you were to read Prococo for its most expansive proposition in the defendant's favor in this case, Prococo itself actually rejected precisely the type of bright-line rule that the district court imposed in this case. Prococo reversed an honest services conviction on the basis of a long-standing but over-broad duty jury instruction that swept in protected First Amendment conduct. And the district court held that a, I'm sorry, Prococo held that a smattering of pre-McNally cases is not sufficient to create honest services liability in ill-defined circumstances. And in this case, it was a private individual who was alleged to have a duty to the public sector, so that was considered an ill-defined circumstance. But the district court misread Prococo for the converse proposition that a smattering of pre-McNally cases is necessary to sustain a particular charging theory. But that is not what Prococo says. And this Court, indeed, has dealt with Prococo on remand and certainly has not interpreted Prococo to be saying that. Step away from the cases for a second. Of course. And look forward. And one of the concerns that defendants raise is that the theory that you're asking us to endorse and that the district court arguably proceeded under until it didn't, is a theory that would, in this case, yes, it reached a U.S. executive, but it could have reached any other person in this scheme. It could have reached all these foreign leaders of their national soccer confederation or federations. It could reach any private sector kickbacks anywhere in the world as long as, I presume, you can establish some fiduciary duty that was violated by the kickback. Maybe your answer is, yep, subject to the limitations of the extraterritoriality, that's true. But I'm wondering if there's a limiting principle that makes it seem like a little bit less expansive. We are not seeking a holding so broad as what the defendants suggest at all. We are simply requesting an affirmance under Behel and Naput, which both clearly stand for the proposition that the accession by an officer of an international organization to his organization's documented, globally recognized anti-bribery codes satisfies the duty element in an honest services prosecution. Okay, but you're not giving me the limiting principle that I think I'm looking for in the sense that what you just described could apply as long as a U.S. wire is involved, which seems pretty common when they're dollar-denominated bribes, without any link at all. If you're talking about a foreign organization and an employee or an agent who's violating duties to that organization, that could happen even in cases where there aren't links to the U.S. at all, right? Well, Your Honor, this Court in Trapillo and the Supreme Court in Pasquantino made clear that the focus of the wire fraud statute is the misuse of the U.S. wires to perpetrate a fraud. And so the issue of what sort of fraud is being committed in an honest services case is the fraud of breaching a fiduciary duty to a principal. So as long as they're using our wires, we don't care where that principal is? And as long as there's a fiduciary duty, it could be any place in the world? We are not suggesting that Your Honors rule so broadly, but rather that in the case where, as here, duty was proved factually beyond a reasonable doubt to the jury by presentation of a globally recognized code, you clearly don't have things like the vagueness concerns that the district court was channeling here. So is the limiting – again, I'm just trying to figure out what the – I know you're not asking us to be so broad, but if we're writing a decision in your favor, how do we word the state of the law in a way that doesn't lead to these consequences? Or maybe we say, yeah, that is the consequence because they're using our wires. And that's what I'm trying to understand. In the case that you just described, is it the fact that it's a globally recognized code that makes it different from a private transaction between two parties in Singapore? The fact that it's globally recognized is crucially important. So that is one limiting factor that Your Honors could impose. Another is having a documented code or set of statutes that identify and lay out the fiduciary duty, which we very clearly had here. We're not seeking reversal on some nebulous employer-employee relationship overseas. It's very clearly written in the codes. And as Luis Bedoya testified, he was one of the soccer executives who accepted bribes. He testified that he had received these codes. They were printed in multiple languages. He understood exactly what he was agreeing to and doing when he joined FIFA and joined these other organizations. So I guess what you're saying is – and maybe the other side can address this – is that whatever the bright line is, we're not near it. That's correct, Your Honor. There may be a bright line, but should we try, as a court, try and predict what that bright line might be? One can imagine far-fetched facts that we wouldn't want to have take up the time of our courts. I think my presiding judge has suggested one. You know, it's private actors in a different country, and it's a simple bribe, and it's a business situation, and maybe it affects honest services. That's correct, Your Honor. And the U.S.-based facts in this case were extensive. This is not at all even close to a situation where there's a stray U.S. wire, and that gives us the jurisdictional toehold here. As we describe in our brief, the U.S. misconduct was extensive. There were conspiratorial meetings in the United States, including here in New York, Miami, Los Angeles. One of the defendants was an American media executive for Fox, an American company. The benefit inured to Fox, an American company. And so while there may be vagueness concerns that linger in the statute, while there may be a set of facts that would be problematic, this case is certainly not that set of facts. But if they're problematic, they're problematic in the future for a court that needs to ‑‑ where the law really is going after remote foreign transactions, and we don't have that kind of precedent here. So, you know, both from a factual perspective and a legal perspective, it's not clear to me why the district court did what she did. I think what she was trying to do was anticipate. Sometimes appellate judges think about, well, if this case goes to the Supreme Court, what are they going to do? I know from my own personal experience that that's kind of a ruinous course of action. I've been reversed on more than one occasion by trying to anticipate how the Supreme Court might decide a case based upon the kind of agglomeration of dicta from other cases and where they might be heading. And they may be heading in a certain direction, but that's for them to do. And they can establish the precedent. We follow precedent as a general problem, a general matter. That's exactly right, Your Honor. Rule of law and predictability are what matters. In this case, this charging theory was completely down the middle and completely reliant on precedent by this court, both in Behel and Naput. Can I ask a process question? Of course, Your Honor. It is a procedurally awkward situation. This has been framed for reasons that make sense strategically, but not necessarily legally as a sufficiency of the evidence challenge. Often insufficiency of the evidence challenge is the way that we evaluate them as we compare the evidence induced at trial with the instructions given at trial. Is this really a backdoor challenge to the instructions given because the court didn't instruct any sort of limitation? And if so, should we be reviewing it for plain error since there was no request for such an instruction? We view it more as a backdoor challenge to vagueness, which was raised pre-trial, but clearly Rule 29 is not an appropriate vehicle for determining vagueness. And, in fact, we would argue, given our proof at trial, there's no way for the defendants to succeed on a vagueness challenge because there were extensive facts induced at trial that they knew that their conduct was unlawful. But you are correct, Your Honor, in the sense that the defendants did not request an instruction limiting the scope of the statute only to domestic conduct. And so if Your Honors were to conceive of this case as really a challenge to the jury instructions, it would be appropriate to review it under plain error. Let me ask the question this way. I don't know how to conceive of it, and I guess I'm looking for guidance from you. Am I right in saying that normally we would evaluate the sufficiency of the evidence with reference to the instructions given to the jury, or is the sufficiency of the evidence evaluated with respect to the law as we understand it to be, regardless of what the instructions were to the jury? You would absolutely, in normal circumstances, review the sufficiency of the evidence against the instructions given at trial. Frankly, we weren't able to find any cases in which a district court reversed a trial finding on the basis of sufficiency, putting it against instructions that weren't given at trial. And there's a line of cases cited in this Court's ILO decision, Reynoso, Weems, and Houston, that talk about how Rule 29 is a non-sequitur in a situation where the law has changed post-trial. And, of course, our position is the law didn't change post-trial, but even if it had, then the appropriate remedy would not have been to issue Rule 29 acquittal here. What would it have been? Let's pretend for a minute that the law did change. Or that the district judge concluded that the law that the court had presumed was wrong, for whatever reason. Subsequent authority, maybe if it didn't directly overrule it, raised enough questions that the court had doubts. What would be the proper response for the court in that situation? The proper remedy would be to grant a new trial and permit the government to proceed with proving its case under the new rule of law. And that's what ILO recognizes and also this line of cases, Reynoso, Weems, Houston. So if the rule of law was that the statute doesn't reach essentially non-public, private kickbacks and bribery between a foreign employee violating the fiduciary duty to a foreign employer, if that were the law, what additional evidence would you present in a new trial that would warrant that? I mean, it just strikes me that the evidence is very clear as to who the victim was, what the fiduciary duty was. Is there some other pocket of evidence that you held back that would have brought the, especially I'm thinking of the condom of all scheme, would have brought that within the scope of the statute, thus understood? I don't want to overstate this, but there is one piece of evidence that was not presented that would be relevant if the district court's bright line rule were applicable, which is the fact that one of the bribed individuals was a U.S. citizen. So recall the district court's rule is that foreign commercial bribery is excluded from the ambit of the honest services statute. And the district court defined that as a foreign employee working for a foreign employer. And so the fact that one of the bribed employees, Figueredo, who was actually the president of condom of all at the time, was a U.S. citizen, would take these facts out of the ambit of the district court's bright line rule. So if we understood the rule as being keen on the citizenship, if we understood it as a foreign employment relationship regardless of the citizenship, then that piece of evidence wouldn't change the analysis. So it really would depend on what the new rule of law was. That's correct, Your Honor. And frankly, your question highlights the problem with the bright line rule, which is what it means to be foreign is not defined by the district court. And there are any number of factors you could imagine that would be relevant. Are we talking about the person's citizenship, their place of birth? Are we talking about their location? When you say there's a problem with the bright line rule, we are talking about a criminal statute. And so it concerns me to think that we would accede to a notion where, well, we kind of figured out on a case-by-case basis and we can't really describe in advance what the parameters are because that seems counter to what we do in our criminal justice system. That's correct, Your Honor, but it's also counter to what we do in our criminal justice system if there are clear precedents from the circuit court outlining the contours of criminal liability and then those are changed post-trial without clear guidance from the Supreme Court. Those pose equal problems. I see I'm out of time, so I will sit down unless Your Honors have any additional questions. Appreciate it. Thank you.  Attorney Shapiro. May it please the Court. My name is Alexandra Shapiro and I represent Apolli Hernan Lopez. This Court should affirm Judge Chen's well-reasoned decision and hold that Section 1346 does not cover foreign commercial bribery. Ms. Shapiro, could you pull the mics a little closer? Yes, I'm sorry. And speak up a little bit. Yeah, thank you. So I'd like to address several questions that came up in response to my adversary's argument. And before I get to the big picture, I would like to set the record straight both factually and legally as to the procedural posture here. First of all, with respect to sufficiency analysis, the way sufficiency analysis works is that the court determines what the applicable law is as to the relevant elements and then applies that law to the evidence at trial. And I can cite a couple of cases for that. Simonelli is actually itself a great example of that because what happened in Simonelli was that in its cert op the government argued about the jury instructions and the defendant said no, the cert petition is asking the Supreme Court to consider the legal question as a matter of sufficiency of the evidence. And that's the basis on which the court took the case. And if you look at the Solicitor General's merits briefs as well, it confirms that the issue in Simonelli was the legal question, you know, in that case about property and whether the right to control doctrine was valid. And that was what the posture there. It was not about the jury instructions. In addition, in a 2016 case called Masaccio v. United States, 577 U.S. 237 at 243, the U.S. Supreme Court made clear that sufficiency is determined based on the law applicable to the elements and not the jury instructions. With respect to the arguments that were made below, we have first there was a motion to dismiss which argued not just that the statute was unconstitutionally vague as applied, but that because of vagueness concerns under Skilling and other case law, including the district court's decision in Giffen, which was very analogous to this circumstance, we asked the trial court before trial to hold that 1346 did not apply to foreign commercial bribery. And we have citations in our brief to the oral argument on the motion to dismiss and to those briefs. And then in our Rule 29 briefs, we made very clear that we were making a point about statutory construction and an argument that under Skilling, Prococo, and other cases, that 1346 should not be construed to cover foreign commercial bribery. And can you tell me how you, if this sort of, I think, comes down to the conversation you were having with your colleague, how would you define sort of the elements of foreign commercial bribery or what is or isn't on the Skilling side of the line versus the verboten side of the line? So I think the key here is the question of the relationship and, you know, and the question of what is the source of the fiduciary duty. And when you're talking, and the question is, is it a foreign relationship or a domestic relationship? Is the relationship public or is it a private commercial one? And what we know that, so if we look at those two sets of factors and we look at the pre-McNally case law, which in Skilling and again in Prococo and this Court in Rubicchi have all taught that the court should look at to determine whether a particular conduct is covered, you see that there are no pre-McNally cases involving foreign corruption at all and certainly none involving a private relationship between a foreign employer and a foreign employee. And then on top of that we have, and the district court didn't discuss this, but we think it's very important and we briefed it below and we briefed it to your honors, Congress has looked at the question of under what circumstances should foreign bribery be proscribed and it has enacted very particular statutes that are written in the normal way a criminal statute is written with specific and clear elements unlike the honest services provision in the FCPA in 1977, which as this Court pointed out in Hoskins was surgically precise. And then more recently in the FEPA, which expanded those prescriptions to include public international organizations, a term which is to be defined by the President through executive order. So can I, and I take those arguments, but one of the things that strikes me about the conversation we're having now is that we're not really riding on a blank slate. NAPU was a sufficiency of the evidence challenge. It contended that you can't rely on this document, this code of ethics to create the necessary fiduciary relationship done by the bribery that would be actionable under this statute. And we rejected that theory squarely. I don't, how would you imagine that if we were to rule in your favor, we would get out from under our binding precedent in that quite recent case? Well, Your Honor, respectfully, I don't think NAPU controls the outcome here because the argument, there are two different aspects of NAPU. So the first part and our principal argument here and the basis on which the district court ruled was the district court concluded that 1346 simply does not cover foreign commercial bribery. And the first part of NAPU is an analysis of that question, which was reviewed for plain error there because those defendants hadn't made that argument in the district court. And this court concluded that the answer to that question was unsettled at best and that there were lingering ambiguities including, as to 1346, including as to what the source of the fiduciary duty could be. So this court in NAPU said the issue was unsettled. Then it goes on and says because we've concluded that the error wasn't plain, we're going to look at these codes. And they said the codes were sufficient. But the sufficiency, I presume you've just described the sufficiency of the evidence is evaluated as against the elements of the law, not the instructions. And so I don't see how the fact that the void for vagueness challenge was ruled for plain error suggests to us that the sufficiency of the evidence reasoning there was a plain error analysis. Well, no, Your Honor. Respectfully, I think what the court said was we can't rule that 1346 doesn't apply to foreign commercial bribery because it wasn't raised below. And that question is unsettled. And then it said if we assume that it does, we're going to review whether these codes were sufficient. Okay. So at least as to your argument that the codes, we shouldn't be relying on the codes, when they say the government's evidence was easily sufficient to prove that FIFA and Commonwealth's respective codes of ethics expressly provided the person is bound by these codes, blah, blah, blah, blah, blah, that feels like that's not a plain error analysis. It says it's easily sufficient. Right. So let me get to that. So the first part is you don't even need to consider that if we're right and Judge Chen was right at all. But if you reject Judge Chen's analysis and our statutory analysis, that's not binding because it was based on a different trial record. And in this case, first of all, the CONMA bowl code at issue in our trial was not enacted until after the contracts at issue were entered. FIFA is entirely irrelevant as to Mr. Lopez. The tournaments at issue, Copa Libertadores tournaments were. So talking about FIFA's irrelevance to Mr. Lopez, is it, he's not the one whose fiduciary duty we're talking about, right? It's the officials who he's bribing, and they're the ones who are bound by that. So there are two different issues. So there are two different reasons why it's irrelevant. One, it's irrelevant because FIFA didn't own the broadcast rights to the particular soccer games that we're talking about when it comes to Mr. Lopez. Now, this case had a lot of other defendants. There are many other issues. But as to Mr. Lopez, all he was convicted of relates to the Copa Libertadores. And the media rights to those tournaments were owned by CONMA Bowl, and those tournaments were organized by CONMA Bowl. FIFA had nothing to do with it. So just so I'm understanding, the theory is that because FIFA didn't have any rights or sort of financial or property interest in the rights to this tournament, the code that binds FIFA members doesn't actually apply to the conduct of the CONMA Bowl officials in connection with that transaction. They're only bound by that when they're doing, taking actions involving matters in which FIFA has a property interest? Well, yes, Your Honor. But also, this is very far afield because unlike in NAPU, where the defendants were themselves the people who were bound by the codes at issue, Mr. Lopez, there was no evidence in this case whatsoever that was introduced even indicating that Mr. Lopez knew anything about these codes. But I really don't think the Court should go down that path. I think that the Court should construe the statute narrowly and hold that it doesn't cover foreign commercial bribery because of the line of decisions, starting with Skilling and Percoco, and because Congress has acted very specifically and very precisely to determine what it wants to proscribe. And this is a criminal law. So, you know, there's a background principle that runs through not only these Supreme Court decisions, but many others, that we have to define the criminal law very precisely. The reason beheld— Well, that's sometimes not observed. I mean, you recognize that there are quite a few areas. One that immediately comes to mind is insider trading. It's sort of like you make up the criminal conduct as you go along if you're a judge because the facts can always be different. And you're looking at the facts. But in addition, here we're looking at the set—we're looking at what were the obligations under the codes at the time of the bribes, not at the time of the original transactions. And, therefore, why isn't that important? Well, Your Honor, I think the — when you say the time of the bribes, I mean, the payments are made before. So I don't agree with that, but as a factual matter. But putting that aside, I think you're correct about insider trading law, which is extremely controversial. And I— But sometimes there are areas in which this arises. But honest service— That's a hard and fast rule that you're announcing. Well, Your Honor, I— Of specificity, although it would be nice to have it that way. But, Your Honor, I respectfully disagree, particularly with respect to the honest services fraud statute, which is notoriously vague. It's almost been struck down. And I think, you know, at least four Supreme Court justices— of being a statute that is passed by Congress in reaction to another case. So we understand what, you know, kind of where they were coming from. I understand, Your Honor, but I think if you took that— In a better way than 10b-5. If you took that point of view, then skilling wouldn't have come out the way it did. Either skilling would have struck the statute down as unconstitutionally vague, or the Court would have just affirmed it and said it applies to anything, including undisclosed self-dealing, right? So I think what the Court was very troubled by that, and the Court was very specific and careful and indeed adopted the general principle that this Court had adopted in Rubicchi, which Your Honor, of course, dissented from. But the same principle was, let's look at the core of pre-McNally case law. And I also want to point out just in terms of— this is an area where it's particularly important to look at the fact that Congress has acted with precision, because we're talking about foreign policy, we're talking about national security concerns, and in the FIPA, for instance, where Congress did extend the FCPA to cover public international organizations, it gave the president, delegated to the president, the authority to decide what organizations are covered. So now we're going to get around that by saying that an individual U.S. attorney's office or the Department of Justice can find some other organization and point to a code. And then on top of that, after— These are big policy issues that you're talking about. But they are policy issues which normally we would say Congress should address, and the Court shouldn't be just guided by these policy issues unless we have at least this Court. I'm not talking about the Supreme Court. They have their own program. But as far as we're concerned, at least my thinking is we look to our prior cases. We look to the statute. We look to our prior cases and see whether they tell us what to do. Well, Your Honor, I think my point isn't really so much a policy concern. My point is that the correct legal analysis is to look at—this is a criminal statute, and we look at what Congress has chosen to do and what it has not chosen to do in the light of the skilling, percoco, rebicki analysis of looking at the core of pre-McNally cases. They've drawn limits to 1346. There's no doubt about that in a lot of these cases. The question is, should we draw a limit because it's a different limit in a different fact situation because they've drawn limits in certain areas? And the main one that they've drawn has been the requirement of an actual bribe, quid pro quo bribe, and rather than just buying conduct by a foreign government or a foreign individual. Well, Your Honor, I think it's all—it's true that bribes and kickbacks are the heartland of 1346, but the question is, is the payment in violation of a fiduciary duty that's beyond dispute in the words of the majority opinion's footnote in skilling? And the point here is that we're talking about extending this to a company policy in a foreign country, and in this particular case, we're also dealing with civil law countries. And if I could—my time's up. I'd just like to make two final quick points. One is that Behel is not controlling. Behel turned on the fact that the duty in question was owed to an organization headquartered in New York City, employee who worked in New York City, and owed a duty of honest services to this New York employer in the Court's words. And in terms of looking at other statutes to determine the content of honest services fraud, I would just point out that in skilling itself, the Court emphasized that it was important to look at these other bribery statutes to derive the content. And, indeed, in the more recent case of Snyder, a 2024 Supreme Court decision, the Court did a similar move in interpreting the bribery statute in 666 and looked at USC 201 and said, you know, at the way 201 was structured and said that was an important indicator of what Congress should be thinking in connection with 666. And so I think there's ample precedent for looking at what Congress has done in these very targeted foreign bribery statutes that should be foreign in mind. I think we have your address. Thank you very much, Counsel. Now we'll hear from Mr. Martinez. May it please the Court. My name is Mike Martinez. I represent Full Play Group. So in light of skilling, Prococo and Rubicchi, I believe the question before this Court is both simple and straightforward. And that question is, was foreign commercial bribery a core application of honest services fraud liability found in more than a smattering of pre-McNally cases? And there are no pre-McNally cases, not even a smattering, applying honest services fraud liability to foreign commercial bribery. Can you talk a little bit about the argument that as to your client, the CONCFAF scheme, even the rule that you're now pressing wouldn't defeat the conviction in that case because of the extensive, the involvement of U.S. organizations in CONCFAF and some evidence that it's headquarters here. Wouldn't that put it on all fours with Behal? No, Your Honor. So the relevant legal question after Behal is whether CONCFAF's employment relationship with Jeffrey Webb, the President, was based in the United States. And the evidence is clear that that wasn't. So you think Behal turned on the fact that the U.N. employee who worked for a foreign, who was a foreign citizen working for a foreign government in the context of the U.N., happened to be placed in the U.S.? In Behal, he was, the defendant in Behal was working in the United States for a U.S. entity based here, such that that entity, the honest services of the defendant, was owed to them here in the United States. The entity, I'm sorry, I thought that the fiduciary duty that got breached by the bribe was a duty between United Nations procurement and a procurement officer. And are you saying that's a United States employment relationship? I am, Your Honor. That individual in Behal was working here in New York City. So can a U.N. employee sue the U.N. under Title VII? I don't know. I mean, I'm just trying to, it's an interesting suggestion. I always understood the U.N. to sort of be a carve-out from the surrounding legal framework, but maybe I'm not understanding it. Well, as I read Behal, I don't believe this Court got into that distinction. As I read Behal, what was the distinguishing factor for Behal was that the defendant owed his honest services to an entity here in the United States. So why did they go to trouble to tell us in Behal that he was subject, through his work, to various U.N. rules, including an obligation to discharge his duties with impartiality, to work in the U.N.'s interest, to avoid using his U.N. position for gain, to obtain approval from the Secretary General for gifts, et cetera, et cetera. If that wasn't the hook on which the Court was predicating liability in that case, why would they have gone to the trouble of telling us all that information? I think the Court was trying to establish a fiduciary duty, which is an element of honest services. Okay. So the fiduciary duty can arise from those sorts of codes and things. Absolutely, Your Honor. And if I could go back to a question that the Court had about Naput. To make clear, full play group isn't challenging the sufficiency of the evidence of the codes and whether they created a fiduciary duty. The challenge of full play group below was that any relationship between foreign employees and their foreign employers, even if it's of a fiduciary nature, is insufficient evidence of Section 1346's intangible right of honest services. And if we go back to Naput, I think Naput is very clear what is settled and what's unsettled. I want to go back to Behel, then, in light of what you just said, because it struck me that the operative holding of Behel was that fraud actionable under Section 1346, and I'm basically reading from it, is limited to the nature of the offenses prosecuted in the premonality cases, i.e., bribery and kickback schemes, not the identity of the actors involved in those cases. Doesn't that sort of contradict the position you're advocating now? No, not at all, Your Honor. This isn't a question of the identity. It doesn't matter, I would say, whether or not someone is a U.S. citizen or a foreign citizen. If you're in the United States, it's a very different, and working for a U.S. employer or a U.S.-based employer here in the United States, that is one category, regardless of the identity of the person. The question, and I think the question that Judge Chen properly looked at, and the question in Naput, if we go back to Naput, was what was the court looking at in Naput? In Naput, the court addressed on plain error review whether a fiduciary duty, a foreign employee owes to his foreign employer, can serve as the basis for an honest services fraud conviction under Section 1346. That was the question. They established that there's a fiduciary duty under the codes. I'm not arguing that. The question is, even if there is a fiduciary duty under the codes between a foreign employer and a foreign employee, is that sufficient under Section 1346? And what the court did was it said, well, counsel, show me some cases. And the defendants were unable to point to any clear authority supporting their position, and the court wasn't able to find any. And what the court did was said, well, the same Judge Chen as in this case, a district court, didn't commit plain error, right, because there are no pre-McNally cases establishing that foreign commercial bribery is a core application of Section 1346 of honest services fraud. But now I would suggest the shoe's on the other foot. The shoe's on the other foot because it's up to the prosecution to show this court that pre-McNally, when we need to define with definiteness what the right of intangible services is, the prosecution has to show this court that actually there were pre-McNally cases, more than Justice Mattering, showing that it was a core application, that foreign commercial bribery is a core application of honest services fraud liability, and they try in their brief, they didn't before Judge Chen, but they try in their brief to this court to do it, and they point to five cases. Right. I want to just push a little bit on the premise of that exercise. We've said consistently that in light of Congress's overriding McNally by statute and creating a statutory honest services fraud, we're going to look to pre-McNally cases to sort of figure out the heartland. I've never understood, and maybe you can show me where I should look, that that calls for some sort of match, that you have to have a factually on all fours case, or I'm sort of thinking of the analogy of Bivens where you say, well, only exactly the fact patterns that the court has recognized prior to this time will remain as Bivens claims. I understood we were looking at the heartland, and the heartland everybody, the Supreme Court and Skilling said, is bribery and kickback schemes. So why does the government then have to show a particular kind of application of a bribery and kickback scheme pre-McNally, namely one in which the employer is foreign? Why haven't they done their job by saying this is in the heartland, it's a bribery and kickback scheme? Well, I think the answer to that one is straightforward, and that is the question of fair notice. Under vagueness, there has to be fair notice. So there is no fair notice to a foreign employee working for a foreign employer that whether there's a fiduciary duty or not, the violation of it would somehow result in U.S. criminal liability. And where we need to look for that would be in pre-McNally case law. And there is no pre-McNally case law at all. The five cases that they showed, and as we laid out in our briefs, there wasn't a single application of honest services fraud liability in the foreign commercial bribery context. The first case that they had, the Groves case, was actually not an honest services fraud case at all, but a money and property fraud case of a domestic victim. They had two other cases, the Sedona cases. One was the original prosecution. One was a habeas prosecution. But in that case, it was a domestic bank, a director for a domestic bank who was bribed. And then they had 2001 false statement cases in which defendants had lied to U.S. agencies about concealing kickbacks fraud. And the issue that rises from that, and why we look at it this way, is because of what Skilling has instructed. So, counsel, let me ask you about that, because we're talking a lot today about Naput and Skilling and Rybicki, and those are all very interesting and valuable. But we're here because the district court changed its mind and anchored that change in Simonelli and Prococo. And so, is it your position that, in fact, the district court's final decision after trial was actually right all along, even before trial, and that it's not Simonelli and Prococo that changed things? Really, that anchoring in Rybicki and even Naput and Skilling and the older cases, that that was sufficient and the district judge just sort of came to that realization? Or do you feel that Simonelli and Prococo were the pivot point? Thank you, Your Honor. I actually think that the judge actually lays out early on in her opinion what happened. She said, I know you raised these arguments before, but now that I've read Simonelli and Prococo, and by the way, Simonelli's not even a non-services fraud case, I think what she takes from Prococo and Simonelli is that the Supreme Court... I understand that. Are you arguing, though, that those did or did not change the landscape? They did not change the landscape. Right. Prococo, in my view, is just a reaffirmation of Skilling, of saying that the expect statutes to be defined as criminals with the clarity that one expects from criminal statutes, and two, it only criminalizes core applications of the honest services fraud liability or honest services fraud doctrine pre-McNally. I think that's what Prococo says. This is more of a reconsideration by the court of its prior ruling upon deeper reflection and with the additional skepticism expressed by the Supreme Court as part of its ongoing skepticism in Simonelli and Prococo. Absolutely, Your Honor. Yes, I don't think it's any type of new rule that the court put forward, just a reconsideration of, you raise this in motion, dismiss. I got it wrong then. I'm not going to get it wrong now that I know really that if I apply Skilling as it's been reaffirmed in Prococo the proper way, I look back pre-McNally, I do not see that foreign commercial bribery is a core application of the honest services fraud doctrine, and therefore she granted the acquittals properly. Thank you. Appreciate your arguments. Here again is Attorney Sherrill. Thank you, Your Honors. I'd like to begin my rebuttal just by addressing Judge Merriam's question. I think the district court is quite clear that it viewed Prococo and Simonelli as a change in the law. She says because of intervening Supreme Court decisions. Correct. That's exactly right. And so just I don't think I need to belabor that, but I think the district court's opinion is quite clear on that point. So I'd like to address the applicability of the FIFA codes and the timing of the CONMEBOL codes. In response to Your Honor's question, Judge Robinson, so just to sort of level set here, duty is very clearly a question of fact, and so the applicability of the FIFA codes to this factual scenario was something that the jury resolved. The FIFA codes and the relevant provisions of it are set forth in Government Appendix 1333 through 1340, and the FIFA codes make, I'm going to grab them right now, but they make crystal clear that the point of FIFA is to govern all of world soccer under one body and that the code applies to all officials. There's also a provision on GA 1340 that talks about how the conduct of FIFA officials shall be judged by FIFA regardless of their function at the confederation level, and so the codes themselves contemplate this sort of choice of law or conflicts of law issue and lays out that the FIFA codes govern regardless and that to the extent a confederation comes up with additional rules or policies, they augment the FIFA codes, but they don't replace them, and so our position, and this was something that was raised at trial, that was argued during the jury instructions charge conference, is that the FIFA codes were applicable throughout the scheme and dictated the fiduciary duty owed by the bribe recipients, which they explicitly acceded to as testified by Luis Bedoya. Now, CONMEBOL puts in its own code of ethics at the end of December 2013, and the scheme went on for about two more years after those codes were passed, including, as we showed in government exhibits 623 and 624, bribe payments to the bribe recipients were made, and so even if we were in a world where the FIFA codes did not apply before 2013, which is not the world we're in, factually, as the jury found, there's at least approximately a year and a half of bribe payments that are going to the bribe recipients, contrary to the fiduciary duty laid out in the CONMEBOL codes, and so given that this is a conspiracy charge and those bribe payments were made in furtherance of the conspiracy, we're sort of safely within the harbor of the CONMEBOL codes as well. I appreciate that. What is your response to your adversary's point of the pre-McNally case law not coming up with any foreign prosecutions, applicability of 1346 to any foreign prosecutions? So our primary point is that that's not what Percoco says at all. Again, as I opened on, Percoco says that a smattering of pre-McNally decisions is not sufficient to create honest services liability in ill-defined circumstances, and it was specifically addressing the Margiotta jury instruction that this court had handed down years earlier, and the district court misread that for the converse proposition that a smattering of pre-McNally cases is necessary to sustain a particular charging theory, and so our point one is just that is not an accurate reading of Percoco, but then as we point out, even if it were true that you needed to point to some pre-McNally precedent, there are in fact decisions, including from this court, that contemplate the idea of foreign bribery schemes being relevant under honest services. Well, at the time there was no statute, but under the wire fraud statute pre-McNally. But one critical fact I would point your honor to is that this court, including I believe your honor was on the panel, in Avenatti made clear that you actually don't need to look to a pre-McNally decision for the purposes of identifying a fiduciary duty. In Avenatti, the defendant there said, hey, you can't point to a pre-McNally decision dealing with an attorney-client relationship, and this court said attorney-client relationship is Hornbook law, which is of course true. It's not an ill-defined circumstance. It's obvious in the same way that these explicit codes are obvious, and so this court didn't need to point to a pre-McNally case for that obvious proposition. And in fact, I believe Percoco does the same. Percoco says we're not going to have a bright line rule that says no private citizen may owe a duty to the public, because instead you would look to agent-principal relationships, and the Supreme Court didn't cite to a pre-McNally decision for that proposition. It cited to a restatement, and so both the Supreme Court and this court have made clear that you need not refer to a specific pre-McNally decision for the proposition that a particular duty relationship falls within the ambit of the statute. Can you tell us a little bit about how to think about, and we're trying to shape the scope of this one statute that Congress passed, and certainly understanding the overall framework of the criminal code and what else Congress has addressed and how it's addressed that becomes relevant to that. And so your colleague is pointing out, gosh, Congress specifically addressed foreign bribery, foreign corruption, and it specifically limited the scope of that statute to the public corruption setting. It chose not to extend it to private commercial settings. And then you look at some of the statutes that we have regarding bribery, and they just define bribery in domestic terms. So from a perspective of understanding, I guess, it's a notice that someone would have. How do we explain away or deal with the existence of these other statutes that are much more specific and seem to reflect a congressional judgment not to sort of extend our laws beyond the boundaries? So we deal with this issue at length in our reply brief, and I would just point your honor to those sections of our reply brief. But the FCPA, and more recently the FEPA, are really securities fraud statutes. The FCPA is in Title 15. There's coextensive jurisdiction between the Department of Justice and the U.S. Securities and Exchange Commission. And as we detailed in our reply brief, the concern that Congress was dealing with at the time that it passed that statute was the fact that it turned out that there were major American corporations that had been bribing overseas public officials, which was viewed as being problematic for our government's attempts to combat communism abroad, and that shareholders of those companies were not getting honest accountings of what those companies were using their money for. Although I suppose if those same folks, American corporations, were bribing private commercial interests abroad, that would have the same impact, the same harm on American shareholders who aren't getting a full picture of the financial situation, yet Congress drew a limit even though the rationale you just described would extend to the private setting. Potentially, but first of all, that conduct could be dealt with through the wire fraud statute, assuming that there is an integral U.S. wire being used, and they're just dealing with two separate issues, two separate concerns. And so the fact that there is some overlap between the statutes doesn't really resolve this question one way or another. And just one thing worth noting, I believe FEPA, as cited in all the briefs, was subsequently repealed and then reinstated and is no longer in the same section, the bribery section of the statute, that it was at the time that everyone wrote their briefs. I don't really know how that cuts one way or another, but just wanted to point that out to your honors. And then as we point out in our reply brief, there is, for example, a bribery statute prohibiting bribery of bank officers whose scope is explicitly beyond domestic borders. And so I think these other statutes you can sort of read as you want, but the bottom line is, as the Supreme Court and this court have noted, the focus of the wire fraud statute is really the misuse of the U.S. wires in order to perpetrate a fraud against someone else. I mean, is it really the use of our wires that we as a nation care about, or is it the fraud we care about, and the wires create the federal jurisdiction to go after the fraud? It's both, Your Honor. The U.S. dollar is a stable currency. Our banking system is stable. Frankly, as the facts of this case showed, people living abroad want to use U.S. banking system and the U.S. dollar to keep their money because, unlike in other countries where their assets can very quickly and easily be nationalized, that won't happen here. And so protecting our wires, protecting our banking system from being used to perpetrate frauds is an important U.S. interest and one that is vindicated by the wire fraud statute. I see my time is up, and so if Your Honors have no further questions, I'll…  Thank you very much.  Well argued. We will take it under advisement, and you'll hear from us next.